## IN THE UNITED STATES COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Darci Forrester and Keith Forrester, individually; C.F., a minor child, by and through his parents and next friends, Darci Forrester and Keith Forrester, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 16-cv-00131-KEW |
| v. | ) ) | |
| INDEPENDENT SCHOOL DISTRICT NO. 19 OF CARTER COUNTY, STATE OF OKLAHOMA,   a/k/a Ardmore City Schools, a political subdivision, | ) ) ) ) ) | |
| Defendant. | ) | |

## PARTIAL MOTION TO DISMISS BY DEFENDANT ARDMORE CITY SCHOOLS WITH COMBINED BRIEF IN SUPPORT

Kent B. Rainey, OBA No. 14619
Staci L. Roberds, OBA No. 18985
ROSENSTEIN, FIST & RINGOLD
525 S. Main, Suite 700
Tulsa, OK  74103
(918) 585-9211
(918) 583-5617 – facsimile
borainey@rfrlaw.com
sroberds@rfrlaw.com

May 20, 2016

Attorneys for Defendant
Ardmore City Schools

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Partial Motion to Dismiss By Defendant Ardmore City Schools With Combined
Brief in Support.................................................................................................................1

Argument and Authority ....................................................................................................4

    Legal Standard ............................................................................................................4

    Proposition I...............................................................................................................5

        The Plaintiffs Lack Standing to Bring Claims On Their
        Own Behalf Under Section 504 and the ADA
        Based on the Alleged Discrimination Against C.F..............................................5

    Proposition II .............................................................................................................10

        The Plaintiffs Cannot Recover Damages for
        Emotional Distress Based on the Mistreatment of C.F. .......................................10

    Proposition III ............................................................................................................11

        The Plaintiffs Have Failed to Exhaust Their Administrative Remedies...............11

        A.     The source and nature of the Plaintiffs' alleged injuries
                are education and can be redressed to a significant
                degree by the IDEA's administrative procedures .....................................13

        B.     The Plaintiffs' claims do not fall within one of the
                limited exceptions to the exhaustion requirement ....................................19

    Proposition IV............................................................................................................21

        The Plaintiffs' Claim for Declaratory Judgment Under the SCA Must Fail.........21

Conclusion .........................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                    <u>Page(s)</u>

*Aces Tranport, Inc. v. Ryan Transp. Servs., Inc.*
    2006 WL 1487008 (D. Kan. 2006) ......................................................................21

*Association for Community Living v. Romer*,
    992 F.2d 1040 (10th Cir. 1993).. ...........................................................11,20,21

*A.M. ex rel J.M. v. New York City Dept of Educ.*,
    840 F.Supp.2d 660 (E.D. N.Y. 2012) ................................................................6,7

*Batchelor v. Rose Tree Media Sch. Dist.*,
    759 F.3d 266 (3d Cir. 2014).................................................................................3,18

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................4

*Blanchard v. Morton Sch. Dist.*,
    509 F.3d 934 (9th Cir. 2007) ...............................................................................7

*Carroll v. Lawton Indep. Sch. Dist. No. 8*,
    805 F.3d 1222 (10th Cir. 2015) ........................................................2,11,12,13,19

*Charlie F. v. Bd. of Ed.*,
    98 F.3d 989 (7th Cir. 1996).. ...............................................................................17

*Cudjoe v. Independent School District No. 12*,
    297 F.3d 1058 (10th Cir. 2002).. .........................................2,3,11,12,13,17,19, 21

*Dry v. United States*,
    235 F.3d 1249 (10th Cir. 2000) ...........................................................................4

*Ellenberg v. New Mexico Military Inst.*,
    478 F.3d 1262 (10th Cir. 2007) ...........................................................................11

*Hayes v. Unified School District No. 377*,
    877 F.2d 809 (10th Cir. 1989) .............................................................................2,3

*Heffington v. Derby United School Dist.*,
    2011 WL 5149257 (D. Kan. Oct. 28, 2011) .........................................................8

*Holt v. United States*,
    46 F.3d 1000 (10th Cir. 1995) .............................................................................4,5

*Hooker v. Dallas Indep. Sch. Dist.*,
        2010 WL 4025776 (N.D. Tex. Sept. 13, 2010)......................................................9

*Hooker v. Dallas Indep. Sch. Dist.*,
        2010 WL 4025877 (N.D. Tex. Oct. 13, 2010)........................................................9

*Link ex rel. Link v. Metro Gov't of Nashville and Davidson County*,
        2012 WL 4506028 (M.D. Tenn. Sept. 28, 2012)...................................................8

*Manuel v. Convergys Corp.*,
        430 F.3d 1132 (11th Cir. 2005) ............................................................................21

*McQueen v. Colorado Springs School District No. 11*,
        488 F.3d 868 (10th Cir. 2007).. ........................................................................2,21

*Miller ex rel. S.M. v. Board of Educ. of Albuquerque Public Schools*,
        565 F.3d 1232 (10th Cir. 2009) ..........................................................................7,8

*M.T.V. v. DeKalb County Sch. Dist.*,
        446 F.3d 1153 (11th Cir. 2006) ........................................................................3,19

*Muskrat v. Deer Creek Public Schools*,
        715 F.3d 775 (10th Cir. 2013) ...............................................................................2

*M.W. ex rel. Williams v. Avila R-XIII Sch. Dist.*,
        2011 WL 3354933 (W.D. Mo. Aug. 2011).............................................................9

*Padilla v. School District No. 1 in the City and County of Denver*,
        233 F.3d 1268 (10th Cir. 2000) ..............................................................3,13,18,19

*Paper, Allied-Indutrial, Chemical & Energy Works Int'l Union v. Continental Carbon Co.*,
        428 F.3d 1285 (10th Cir. 2005) .............................................................................4

*Rideau v. Keller Ind. Sch. Dist.*,
        ___ F.3d. ____, 2016 WL 13548490 (5th Cir. 2016) ..........................................10

*Urban v. Jefferson County School District R-1*,
        89 F.3d 720 (10th Cir. 1996).. ............................................................................20

*Warth v. Seldin*,
        422 U.S. 490 (1975)................................................................................................8

*Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*,
        550 U.S. 516 (2007)........................................................................................6,7,8

*Woodruff ex rel. B.W. v. Hamilton Tp. Pub. Sch.*,
    2007 WL 4556968 (D. N.J. Dec. 20, 2007) ...................................................9

*Woodruff v. Hamilton Tp. Pub. Sch.*,
    305 Fed. Appx. 833 (3d Cir. 2009) ...........................................................9

## <u>Statutes</u>

18 U.S.C. § 2511 *et seq.* ...........................................................................1,3

20 U.S.C. §§ 1400 *et seq.* ............................................................................2

20 U.S.C. § 1401 (8) ....................................................................................11

20 U.S.C. § 1412(a)(5)(A) ............................................................................11

20 U.S.C. § 1415(l) ..............................................................................12,13,18

20 U.S.C. § 1415(b)(6) ............................................................................6,7,8

20 U.S.C. § 1415(b)(6)(A) .............................................................................12

20 U.S.C. § 1415(f)(1)(A) ..............................................................................12

20 U.S.C. § 1415(g) ......................................................................................12

20 U.S.C. § 1415(i)(2) ...............................................................................7,12

20 U.S.C. § 1415(i)(2)(A) ................................................................................6

28 U.S.C. § 2201 ....................................................................................1,3,21

29 U.S.C. § 794 ..............................................................................................1

42 U.S.C. §§ 12101 *et seq.* ............................................................................1

42 U.S.C. § 12203 ..........................................................................................1

OKLA. STAT. tit. 12, § 1651 .......................................................................1,21

OKLA. STAT. tit. 13, § 176.1 *et seq.* .............................................................1

OKLA. STAT. tit. 13, § 176.4(5) .....................................................................22

## **Rules**

Rule 12(b)(1), FED. R. CIV. P.. .................................................................................................1,5

Rule 12(b)(6), FED. R. CIV. P. ...................................................................................................4

Rule 56 FED. R. CIV. P...............................................................................................................4

**PARTIAL MOTION TO DISMISS BY DEFENDANT ARDMORE
CITY SCHOOLS WITH COMBINED BRIEF IN SUPPORT**

The Defendant, Independent School District No. 19 of Carter County, Oklahoma, also known as the Ardmore City Schools ("School District"), respectfully submits this brief in support of its motion to dismiss certain claims in this action.

The Plaintiffs, Darci and Keith Forrester, are the parents of a minor child with autism and severe receptive expressive language disorder, C.F., who attends the School District, and they bring this action individually and on behalf of C.F.  The Plaintiffs allege that the School District "had a duty and obligation to provide C.F. with certain services, programs, and/or activities[,] . . . included, but not limited to, social interactions with his typically-developed and disabled peers." Complaint, ¶ 12, p. 3 [Docket No. 3].  They assert that C.F. was "isolated from his disabled and typically-developed peers almost all day while he was at school [and that] [t]he impact of social isolation on C.F.'s social and emotional development has been severe and significant." *Id.*, ¶ 22, p. 5.  Based on such conduct, the Plaintiffs assert federal claims against the School District, including:  (1) a claim individually and on C.F.'s behalf under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); (2) a claim individually and on C.F.'s behalf under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"); (3) a claim individually under the ADA, 42 U.S.C. § 12203, for retaliation; and (4) a claim for declaratory judgment under 28 U.S.C. § 2201, requesting a determination by the court that the Plaintiffs did not violate Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2511 *et seq.*  Under state law, the Plaintiffs also assert a claim for declaratory judgment under OKLA. STAT. tit. 12, § 1651, requesting a determination by the court that the Plaintiffs did not violate the Oklahoma Security of Communications Act, OKLA. STAT. tit. 13, § 176.1 *et seq.* ("SCA").

The School District now moves to dismiss the Plaintiffs' individual claims and those claims brought on behalf of C.F. under the ADA and Section 504 for lack of subject matter jurisdiction.  *See* FED. R. CIV. P. 12(b)(1).  To the extent the Plaintiffs bring their own claims based on the alleged treatment of C.F., the Plaintiffs lack standing to bring such claims under Section 504 and the ADA.  Moreover, even if the Plaintiffs have standing to bring such claims, they cannot recover emotional distress damages based on the treatment of their son.

All of the Plaintiffs' claims brought under Section 504 and the ADA (individually or on behalf of C.F.), including their claim for retaliation under the ADA, fail for lack of subject matter jurisdiction because of the Plaintiffs' failure to exhaust administrative remedies under the Individuals with Disabilities Education Act, 20 U.S.C. §§1400 *et seq.* ("IDEA").[1]  The Plaintiffs' Section 504 and ADA claims are all premised upon C.F.'s public education at the School

---

[1]  The Tenth Circuit reaffirmed that the failure to exhaust administrative remedies under the IDEA is jurisdictional in *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058 (10th Cir. 2002), noting "that both the language and the policy of the IDEA suggest that if a student with a disability seeks to bring a claim for educational injuries, then he must plead and show either that he has exhausted his administrative remedies under the IDEA or that the relief he is seeking [is] not available under the IDEA."  *Id.* at 1063, *citing Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 810-11 (10th Cir. 1989) ("Because the failure to exhaust administrative remedies is jurisdictional … before considering the plaintiffs' substantive claims[,] we must determine whether these claims are properly before the court, or whether the plaintiffs were required first to exhaust their administrative remedies[.]").  Since the *Cudjoe* decision, the Tenth Circuit has declined to address the jurisdictional issue.  *See McQueen v. Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007) (acknowledging there was some question as to whether a failure to exhaust under the IDEA is jurisdictional or merely an affirmative defense but declining to decide the issue based on facts of case); *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 783-84 (10th Cir. 2013) (concluding "IDEA exhaustion's status as jurisdictional prerequisite [was] not at issue" because defendants raised the issue before the district court and on appeal); *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1230 n.4 (10th Cir. 2015) (relying on *McQueen* and *Muskrat* and concluding that "[b]ecause the School District here raised the exhaustion requirement in its motion to dismiss and renewed that argument on appeal, we need not decide whether exhaustion is jurisdictional because the result is the same in either case").  Thus, the controlling precedent in the Tenth Circuit continues to be that the failure to exhaust administrative remedies under the IDEA deprives the court of subject matter jurisdiction.

District.  The United States Court of Appeals for the Tenth Circuit has held that a plaintiff who seeks relief for an injury that falls within the coverage of the IDEA, must exhaust the administrative remedies under the IDEA before bringing suit, even if the plaintiff is not asserting a cause of action under the IDEA.  *Padilla v. Sch. Dist. No. 1 in the City and County of Denver*, 233 F.3d 1268, 1274 (10th Cir. 2000); *Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 813 (10th Cir. 1989).  In *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058 (10th Cir. 2002), the Tenth Circuit held that the plaintiff was required to exhaust her administrative remedies under the IDEA before pursuing discrimination claims under Section 504 and the ADA.  *Id.* at 1063. Because the Plaintiffs have not exhausted their administrative remedies before filing the instant case, the Plaintiffs' claims under Section 504 and the ADA should be dismissed for lack of jurisdiction.

Moreover, the Plaintiffs' allegations of retaliation under the ADA are also subject to the exhaustion requirement and should be dismissed.  *See Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266 (3d Cir. 2014) and *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153 (11th Cir. 2006).

Finally, the Plaintiffs' state law claim for declaratory judgment under the SCA should be dismissed because any declaratory judgment is required to be asserted pursuant to 28 U.S.C. § 2201, and this claim is moot as a state court has decided the issue.[2]

---

[2]  The School District does not seek dismissal of the Plaintiffs' claim for declaratory judgment under 28 U.S.C. § 2201, requesting a determination by the court that the Plaintiffs did not violate Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2511 *et seq.*

## Argument and Authority

### Legal Standard

A motion to dismiss for lack of subject matter jurisdiction may be based on either a facial challenge to the sufficiency of the complaint or a challenge to the facts upon which subject matter jurisdiction depends. The former presents only legal issues, whereas the latter raises factual grounds. *Dry v. United States*, 235 F.3d 1249, 1252-53 (10th Cir. 2000), *citing Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). A facial challenge of subject matter jurisdiction based on legal grounds "questions the sufficiency of the complaint . . . [and] a district court must accept the allegations in the complaint as true." *Holt*, 46 F.3d at 1002. It is governed by the same standard as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Dry*, 235 F.3d at 1253. The standard requires that a complaint must contain "enough facts to state a claim that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

But a challenge to the factual basis for subject matter jurisdiction does not constrain the court to the pleadings, as "the court must look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence." *Paper, Allied-Industrial, Chemical & Energy Workers Int'l Union v. Continental Carbon Co.*, 428 F.3d 1285, 1292-93 (10th Cir. 2005). Generally, the court's consideration of evidence outside the pleadings for a factual challenge will not convert the motion to a Rule 56 motion. However, if the "resolution of the jurisdictional question is intertwined with the merits of the case[,]" then the court is required to convert the motion to one for summary judgment. *Holt*, 46 F.3d at 1003. "The jurisdictional

question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id.*

In this case, the School District's argument that the Plaintiffs lack standing to bring their own claims under Section 504 and the ADA based on the alleged discrimination of C.F. amounts to a facial challenge of subject matter jurisdiction and is subject to the Rule 12(b)(6) standard. The School District's argument that the Plaintiffs cannot recover damages for their own emotional distress based on the treatment of C.F. is also subject to the Rule 12(b)(6) standard. However, the School District's challenge to subject matter jurisdiction based on the failure to exhaust administrative remedies under the IDEA is a factual challenge, as the School District has submitted documents outside the pleadings as exhibits to its motion to show the court that all the Plaintiffs' claims brought under Section 504 and the ADA are based on the same allegations and conduct complained of by the Plaintiffs in their pending IDEA due process proceeding.

### Proposition I

### The Plaintiffs Lack Standing to Bring Claims On Their Own Behalf
### Under Section 504 and the ADA Based on the Alleged Discrimination Against C.F.

The Plaintiffs contend that they have "independent standing to seek compensatory damages" for the School District's alleged violation of Section 504 and the ADA based on "the close parental relationship" with C.F. and on their "obligations to ensure C.F. receives appropriate upbringing[.]"  *See* Complaint, ¶¶ 43, 50, 2-3 (Prayer for Relief).  They seek such damages not only for the alleged injuries suffered by their son, C.F., but also for their own alleged "injuries and losses."  *Id.* at ¶¶ 44, 51, 6 (Prayer for Relief).  However, to the extent the Plaintiffs' claims for damages rest on the alleged treatment of their disabled son, they lack standing to bring such claims.

At the center of the Plaintiffs' allegations is the United States Supreme Court's decision in *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007), wherein the Supreme Court concluded that the "IDEA grants parents independent, enforceable rights. These rights, which are not limited to certain procedural and reimbursement-related matters, encompass the entitlement to a free appropriate public education for the parents' child." *Id*. at 533. In reaching its conclusion, the Court relied heavily on the text and statutory structure of the IDEA. *See*, *e.g.*, *id*. at 525 (quoting § 1415(b)(6) of the IDEA which "requires that a state provide '[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child'"); 526 (quoting § 1415(i)(2)(A) of the IDEA which states that "'[a]ny party aggrieved by the findings and decision made [by the hearing officer] shall have the right to bring a civil action with respect to the complaint'"). The Court ultimately held that "[p]arents enjoy rights under the IDEA; and they are, as a result, entitled to prosecute IDEA claims on their own behalf." *Id*. at 535.

In support of their allegations that they have independent standing to pursue their own claims for damages under Section 504 and the ADA, the Plaintiffs appear to rely solely on a district court opinion from the Eastern District of New York, *A.M. ex rel. J.M. v. New York City Dep't of Educ.*, 840 F.Supp.2d 660 (E.D. N.Y. 2012). In reaching its decision, the *A.M.* court noted there had been much disagreement in the federal courts over whether parental standing conferred on parents under the IDEA by the Supreme Court in *Winkelman* also extends to claims brought by parents on their own behalf under Section 504 and the ADA. *Id*. at 674. The *A.M.* court chose to follow a line of cases finding that parents have standing to bring their own claims under Section 504 and the ADA, specifically finding "that *Winkelman* standing applies to the

parent's independent *pro se* claims against the defendants under Section 504 and the ADA based upon the alleged discriminatory conduct by defendants against J.M., their alleged statutory procedural violations, and the parent's claims of retaliation under the statutes." *Id*. at 675.[3]

Although the School District has not located a Tenth Circuit case on point with this issue, it would refer the court to the discussion of the *Winkelman* decision in *Miller ex rel. S.M. v. Board of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232 (10th Cir. 2009), wherein the Tenth Circuit discusses *Winkelman* in terms of the "any matter" language from § 1415(b)(6). The court's discussion suggests it would apply *Winkelman* narrowly and to only those claims arising under the IDEA.

> The Supreme Court's decision in [*Winkelman*] . . . does not support Ms. Miller's unbounded interpretation of 'any matter.' **In *Winkelman*, the Court addressed the question of whether the rights protected by the IDEA belonged to the child alone or to both the parents and the child, concluding that various provisions "accord parents independent, enforceable rights [under the IDEA]."** In reaching its conclusion that parents were also real parties in interest (and thus able to proceed unrepresented by counsel), the Court examined [20 U.S.C.] § 1415(b)(6). The Court described § 1415(b)(6) as providing "[a] wide range of review" and as "empower[ing] parents to bring challenges based on a broad range of issues." It also noted more generally that the IDEA contained "provisions for expansive review and extensive parental involvement." **The Court concluded that, because the IDEA "does not differentiate . . . between the rights accorded to children and the rights accorded to parents," a parent may be "a 'party aggrieved' for purposes of § 1415(i)(2) with regard to 'any matter' implicating these rights."**

---

[3]   One of the cases relied upon by the *A.M.* court is the Ninth Circuit case of *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934 (9th Cir. 2007). Although the *Blanchard* court did extend independent standing to parents under Section 504 and the ADA, the School District does not read the case as expansively as the Plaintiffs do. The court held that for purposes of her Section 504 and ADA claims, "Blanchard is a proper plaintiff, at least insofar as she is asserting and enforcing the rights of her son and incurring expenses for his benefit." *Id*. at 938. Moreover, the court did not decide the issue of whether Blanchard was entitled to recover damages for her "own emotional distress resulting from the enforcement of a child's educational rights, because Blanchard abandoned that claim by failing to raise it in her brief on appeal." *Id*.

*Id.* at 1244 (emphasis added). The *Miller* court noted that § 1415(b)(6) did not "provide blanket coverage for any issue a parent wishes to raise[,]" and it concluded the "Court's analysis was focused on parents' role in the statutory procedures, and its general remarks provides no guidance regarding the outer boundaries of 'any matter.'" *Id*.

In any event, the School District believes that because there is not a Tenth Circuit case directly on point, the more prudent course of action is to apply *Winkelman* narrowly and only in the context of the IDEA. There are several cases which have taken this approach. In the unpublished decision of *Heffington v. Derby United Sch. Dist.*, 2011 WL 5149257 (D. Kan. Oct. 28, 2011), the District Court of Kansas noted the lack of controlling authority on the issue and relied on "[t]he general rule . . . that a plaintiff 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id*. at *2, *quoting Warth v. Seldin*, 422 U.S. 490, 499 (1975). The court cited authorities on both sides of the issue, but it determined that the plaintiff could not bring her own ADA and Section 504 claims "that arise from discrimination against, or the denial of assistance to, G.H." *Id*. n.2 (citing cases). It concluded that "[b]ecause she is not allowed to bring claims that assert the legal rights of others, the court dismisses plaintiff's ADA and Rehabilitation Act claims for lack of jurisdiction." *Id*. at *2.

Similarly, in *Link ex rel. Link v. Metro. Gov't of Nashville and Davidson County*, 2012 WL 4506028 (M.D. Tenn. Sept. 28, 2012), the district court specifically rejected the *A.M*. court's decision, instead relying on district court cases that had declined "to confer independent standing on parents asserting claims under [Section 504] and the ADA" based on the Court's analysis in *Winkelman* being "rooted in the text and statutory structure of the IDEA." *Id*. at *5, *citing Winkelman*, 550 U.S. at 523 ("We agree that the text of the IDEA resolves the question

presented.   We recognize, in addition, that a proper interpretation of the Act requires a consideration of the entire statutory scheme."); *see also M.W. ex rel. Williams v. Avilla R—XIII Sch. Dist.*, 2011 WL 3354933, at *2 (W.D. Mo. Aug. 3, 2011) (declining to extend *Winkelman* to the Rehabilitation Act and ADA because its analysis was too closely rooted to the text and structure of the IDEA); *Hooker v. Dallas Indep. Sch. Dist.*, 2010 WL 4025776, at *6 (N.D. Tex. Sept. 13, 2010) ("This court declines to so extend the *Winkelman* decision because it is too closely tied to the text and structure of the IDEA to apply equally to the ADA and the Rehabilitation Act"), *adopted*, 2010 WL 4024896 (N.D. Tex. Oct. 13, 2010).

Further, in the unpublished opinion of *Woodruff ex rel. B.W. v. Hamilton Tp. Pub. Sch.*, 2007 WL 4556968 (D. N.J. Dec. 20, 2007), the district court narrowly construed *Winkelman* in the context of the IDEA, noting the parent plaintiffs could not assert claims under Section 504, the ADA, New Jersey's Law Against Discrimination, due process violations, and emotional distress.   *Id*. at *4.   The parents amended their complaint and appealed the court's subsequent dismissal of the amended complaint.   Although the Third Circuit did not directly address whether the parents had standing to bring Section 504 and ADA claims on their own behalf, the court narrowly construed *Winkelman* stating that "the Woodruffs may prosecute their legally cognizable interests in B.W.'s FAPE without an attorney, but *Winkelman* is limited to the IDEA context and does not permit them to litigate the NJLAD, procedural due process, or common law counts alleged in their Amended Complaint."   *Woodruff v. Hamilton Tp. Pub. Sch.*, 305 Fed. Appx. 833, 836 (3d Cir. 2009).[4]

---

[4]   Arguably, the only claim upon which the Plaintiffs could have standing for any injury they directly suffered is for their retaliation claim under the ADA.   *See*, *e.g.*, *Hooker v. Dallas Indep. Sch. Dist.*, 2010 WL 4025877, at *5 (N.D. Tex. Oct. 13, 2010) (finding parent plaintiffs had standing to bring ADA retaliation claim because they alleged they "suffered injuries that are

Accordingly, to the extent the Plaintiffs seek to bring their own claims under Section 504 and the ADA based on the School District's treatment of C.F., they lack standing to do so under a narrow interpretation of *Winkelman*, and their claims should be dismissed for lack of subject matter jurisdiction.

## Proposition II

### The Plaintiffs Cannot Recover Damages for Emotional Distress Based on the Alleged Mistreatment of C.F.

Even if the court determines the Plaintiffs have standing on their individual claims under Section 504 and the ADA, the claims still fail to the extent the Plaintiffs seek damages for their own emotional distress resulting from the alleged treatment of their son.  In *Rideau v. Keller Ind. Sch. Dist.*, __ F.3d __, 2016 WL 1358490 (5th Cir. 2016), the Fifth Circuit determined that the question of damages is not properly analyzed as a matter of Article III standing, but it instead addressed the issue in terms of whether the parents were allowed to recover damages awarded by a jury for their own mental anguish that resulted from the teacher's mistreatment of their disabled son.  The court concluded that "neither the ADA nor the Rehabilitation Act" allowed for such recovery.  *Id*. at *11.  The court discussed *Winkelman* and determined that "[e]ven if we agreed with the premise that parents have individual rights they can assert under those statutes based on discrimination experienced by their disabled children, no court has ever permitted recovery of the bystander tort-like damages requested here."  *Id*.

Accordingly, the Plaintiffs should not be allowed to recover emotional distress damages on their individual claims based on the alleged mistreatment of C.F.

---

distinct from any injury to D.H.").  However, as discussed in Proposition III, this claim too fails for failure to exhaust administrative remedies.

**Proposition III**

**The Plaintiffs Have Failed to Exhaust Their Administrative Remedies**

Regardless of whether the Plaintiffs have standing to bring their own claims based on the alleged treatment of C.F. or any claims based on injuries they allegedly suffered directly, all of the claims asserted by the Plaintiffs under Section 504 and the ADA are subject to the IDEA's requirement for exhaustion of administrative remedies.

"The IDEA, and its predecessor the Education of the Handicapped Act …, [were] designed 'to ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] … that emphasizes special education and related services designed to meet their unique needs.'" *Cudjoe*, 297 F.3d at 1063-64 (citation omitted).  FAPE refers to the "special education and related services," which are determined and provided for in a student's "individualized education program" ("IEP").  20 U.S.C. § 1401(8).  "Educational services must be provided in accordance with the child's IEP, which 'sets forth the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and procedures to determine whether the child has met the goals.'" *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1227 (10th Cir. 2015), *quoting Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1043 (10th Cir. 1993).

Under the IDEA, "[e]ach child has a substantive right to receive his or her education in the 'least restrictive environment[,]' meaning that the student "must be educated '[t]o the maximum extent appropriate . . . with children who are not disabled' in a 'regular educational environment.'" *Ellenberg v. New Mexico Military Inst.*, 478 F.3d 1262, 1268 (10th Cir. 2007), *quoting* 20 U.S.C. § 1412(a)(5)(A).  The IDEA prohibits states "from segregating or otherwise removing disabled children from the regular classroom setting except 'when the nature or

severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.'" *Id*.

In enacting the IDEA (and the EHA before it), Congress also created a detailed administrative procedure for parents to pursue and exhaust before filing a federal claim.  The IDEA requires that children with disabilities and their parents must be given "an opportunity to present complaints with respect to any matter relating to … the provision of a free appropriate public education."  20 U.S.C. § 1415(b)(6)(A).  When such a complaint is filed by a person authorized to do so, the State or local educational agency must conduct an impartial due process hearing.  20 U.S.C. § 1415(f)(1)(A).  Any party aggrieved by the decision of a local educational agency may appeal to the State educational agency.  20 U.S.C. § 1415(g). Only after these procedures have been exhausted may a party institute a civil action in either state or federal court.  20 U.S.C. § 1415(i)(2); *see also Carroll*, 805 F.3d at 1227 (explaining the complaint procedure under the IDEA).

Congress has expressly stated that parties are required to exhaust administrative remedies under the IDEA for all claims arising out of the educational services provided to a child with disabilities, including claims brought under other federal laws such as Section 504 and the ADA:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, **except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter**.

20 U.S.C. § 1415(l) (emphasis added); *see also Cudjoe*, 297 F.3d at 1063 (holding that plaintiff was required to exhaust her administrative remedies under the IDEA before pursuing discrimination claims under Section 504 and the ADA).

The Tenth Circuit has interpreted Section 1415(l) in *Padilla v. Sch. Dist. No. 1 in the City and County of Denver*, 233 F.3d 1268 (10th Cir. 2000) and more recently in *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222 (10th Cir. 2015).  In analyzing whether the plaintiffs in those cases were required to exhaust their administrative remedies, the courts focused on the meaning of the words "seeking relief that is also available under [the IDEA]" and concluded that "available" relief means "relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers."  *Padilla*, 233 F.3d at 1274; *Carroll*, 805 F.3d at 1227.  The *Carroll* court summarized the exhaustion inquiry as follows:

> Our exhaustion inquiry therefore focuses on "the source and nature of the alleged injuries for which he or she seeks a remedy," not the specific remedy sought. Thus, "the dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies."  "If so, exhaustion of those remedies is required."  And "the IDEA's exhaustion requirement will not be excused simply because," as in this case, "a plaintiff requests damages, which are ordinarily unavailable in administrative hearings held pursuant to the statute, if his alleged injuries could be redressed under the IDEA."  Finally, we construe ambiguities in favor of exhaustion.  In *Padilla* we explained, "Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required in order to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem."  By "focusing on whether there is any relief available under the IDEA to remedy the injury, as opposed to the particular relief sought by the plaintiff," the IDEA process cannot be "short-circuited by a rush to court seeking damages."

*Id.* at 1227, *quoting Padilla*, 233 F.3d at 1274 and *Cudjoe*, 297 F.3d at 1066-1067 (internal citations omitted).

### A.   The source and nature of the Plaintiffs' alleged injuries are education and can be redressed to a significant degree by the IDEA's administrative procedures.

Although the Plaintiffs do their best to couch their claims as discrimination claims under Section 504 and the ADA, the Plaintiffs' allegations in this case allege injuries the "source and nature" of which are educational in nature and that can be redressed to a significant degree by the

IDEA's administrative procedures and remedies.  A comparison between the First Amended Due

Process Complaint (submitted in the Plaintiffs' pending due process proceeding) and the

Complaint filed in this matter demonstrates that this lawsuit is nothing more than an attempt by

the Plaintiffs to bring claims for damages based on the same conduct they allege violates the

IDEA in their due process complaint.

Specifically, both the Complaint and the due process complaint allege that C.F. suffers

from autism and severe receptive expressive language disorder, which affects his ability to

verbally communicate, and requires his use of an augmentative and alternative communication

device or a "talker."

> 2.      C.F. is a severely disabled ten-year old boy, who has been
> diagnosed with Autism and Severe Receptive Expressive
> Language Disorder.  His disabilities include a present inability to
> communicate verbally, and he has an estimated I.Q. of 44  C.F. is a
> resident of the ACS school district and has been enrolled in
> Defendant's school district for a number of years.
>
> 10.     At the age of two, C.F. was diagnosed with Autism and
> Severe Receptive Expressive Language Disorder by Dr. Laura
> McGuinn at the University of Oklahoma Health Sciences Center
> Department of Pediatrics Child Study Center.
>
> 11.     Because of his disabilities, C.F. now and at all relevant
> times has been primarily non-verbal and cannot communicate with
> words.  In order to verbally communicate his needs and wants,
> C.F. must use an Augmentative and Alternative Communication
> Device ("AACD").  The parties colloquially refer to C.F.'s AACD
> as his "Talker."

*Compare* Complaint, ¶¶ 2, 10-11 [Docket No. 3] *with* First Amended Due Process Complaint

(DPH 2093), pp. 1, 7 (identifying disabilities and the use of a "Talker"), Exhibit 1 (filed under

seal).

Additionally, both the Complaint and the due process complaint allege that C.F. is

eligible to receive "Services" from the School District and that these "Services" include social

interaction with C.F.'s "typically-developed and disabled peers."   When the Plaintiffs became concerned about whether the School District was providing such "Services" to C.F., they began using his "Talker" as a recording device during the course of the school day.

> 12.     During C.F.'s Second (2013-2014), Third (2014-2015), and Fourth (2015-2016) years, ACS had a duty and obligation to provide C.F. with certain services, programs, and/or activities (the "Services").   These Services included, but were not limited to, social interactions with his typically-developed and disabled peers.

> 13.     During the course of C.F.'s Second, Third, and Fourth Grade years, Parents gradually began to develop concerns about C.F.'s school environment, specifically including concerns about how C.F. was being treated by ACS teachers and staff relating to his physical and emotional health and well-being.

> 17.     After learning of the seclusion incident for the first time in the summer of 2015, Parents set out to obtain evidence about what was happening to C.F. during the course of his school day.   They did this by recording C.F.'s school day through the use of his Talker.

> 22.     On the days the recordings were made, C.F. was taken directly to the "Sensory Room" at Charles Evans Elementary School where he stayed almost all day with two paraprofessionals. C.F. was thus isolated from his disabled and typically-developed peers almost all day while he was at school.   The impact of social isolation on C.F.'s social and emotional development has been severe and significant.

*Compare* Complaint, ¶¶ 12, 13, 17, and 22 *with* First Amended Due Process Complaint (DPH 2093), pp. 3-6 (discussing (i) that C.F. has been denied FAPE in the least restrictive environment – the special education classroom – with his disabled peers, (ii) that C.F. has been denied FAPE in the least restrictive environment – the regular education classroom – with his non-disabled peers, (iii) that the impact on C.F. has been severe and affected his education, and (iv) that the

conduct is contrary to his IEP and the IDEA)[5] and <u>12-11-14 Behavioral Intervention and Support</u>

<u>Plan</u>, pp. 3-4 (plan signed by parents (p.5) and describing behavior issues and the response or

consequence to calm behavior, including walking and swinging and spending time in the Sensory

Room), Exhibit 3 (filed under seal).

Moreover, the allegations recited within the Plaintiffs' Section 504 and ADA claims in

the Complaint reference issues directed to C.F.'s education and are also addressed in the due

process complaint.

> 39.    By the acts and failures of ACS administrators, staff, and
> personnel, ACS intentionally excluded C.F. from participation in
> and/or denied him the benefits of the services, programs and/or
> activities of ACS, including but not limited to the services
> described above.  Such exclusions and/or denials were solely by
> reason of C.F.'s disability and were in violation of Section 504.

> 48.    By the acts and failures of ACS administrators, teachers,
> staff, and other personnel, ACS excluded C.F. from participation
> in, and denied C.F. the benefits of, the services, programs, and/or
> activities of ACS, including but not limited to the services
> described above.  Such exclusion and denial were by reason of
> C.F.'s disability.

*Compare* <u>Complaint</u>, ¶¶ 39 and 48 with <u>First Amended Due Process Complaint (DPH 2093)</u>, pp.

6-7 (alleges the denial of FAPE in special education services has prevented C.F. from receiving

any educational benefit).

Finally, in reference to their requests for declaratory judgment in their fourth and fifth

causes of action (<u>Complaint</u>, ¶¶ 57-61 and 62-66), the Plaintiffs acknowledge that they have filed

---

[5]  The "Services" referenced by the Plaintiffs in the Complaint were provided to C.F. through his IEP as discussed in the due process complaint.  C.F.'s IEP specifically references the special education services C.F. is to receive and it includes interaction with students in the special education classroom ("disabled peers") and in the regular education classroom ("typically-developed" peers).  *See* <u>12-11-14 IEP</u>, p. 8 (Services Page), Exhibit 2 (filed under seal).

a due process complaint before the Oklahoma State Department of Education under the IDEA, which remains pending at this time.

> 35.    In November 2015, Parents filed an administrative due process complaint with the Oklahoma State Department of Education under the [IDEA].  In the administrative proceeding, ACS has asked that that [sic] Hearing Officer determine that the audio-video recordings obtained through C.F.'s Talker be excluded as evidence on the basis that the recordings were obtained in violation of Title III and the SCA, *supra*.

Complaint, ¶ 35.

The comparison between the Complaint and the First Amended Due Process Complaint submitted by the Plaintiffs in DPH 2093 clearly shows that the Plaintiffs' claims under Section 504 and the ADA are virtually identical to the conduct which the Plaintiffs contend in their due process complaint is contrary to C.F.'s IEP and in violation of the IDEA.  Although not specifically alleged by the Plaintiffs in the Complaint, their allegations that C.F. has been isolated to his detriment from his disabled peers in the special education classroom and from his "typically developed" peers in the regular education classroom are essentially a complaint that C.F. has been denied a FAPE in the least restrictive environment, which has resulted in educational injury in the form of a loss of social interaction.  Even on the face of the Complaint alone, it is clear that both the "genesis and manifestation" of C.F.'s claims are educational in nature and part of the Plaintiffs' efforts to ensure that C.F. receives a FAPE in the least restrictive environment.  *See Cudjoe*, 297 F.3d at 1067 ("The IDEA offers redress for claims whose 'genesis and manifestation … are educational.'"), *quoting Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 992 (7th Cir. 1996).  Moreover, the allegations directly address C.F.'s continuing educational needs and the School District's alleged failure to provide C.F. with the necessary educational services included in his IEP.  These alleged injuries are

17

presumptively redressable to some degree by the IDEA's administrative procedures and

remedies.  *See Padilla*, 233 F.3d at 1275 (finding that injuries that are "educational in nature" are

"presumptively redressable through IDEA's administrative procedures").

The Plaintiffs also allege they were retaliated against by the School District under the

ADA after they opposed C.F.'s treatment by School District employees.

> 25.    After Parents retained an attorney and began to engage in
> protected opposition to what they reasonably and in good-faith
> perceived to be disability discrimination, ACS personnel began
> prohibiting Darci Forrester from entering the elementary school
> building by meeting her at the door to escort C.F. to his classroom.
> Prior to Parents' protected opposition, Darci Forrester was allowed
> to escort C.F. to his classroom.
>
> 26.    In addition to creating a "Forrester Drop Off Procedure,"
> ACS mandated that C.F.'s teachers and staff members tell Darci
> Forrester, in response to any question she asked, that they "did not
> know" the answer.  This is reflected in ACS' internal emails,
> wherein one staff member states that "I am following the protocol
> of saying 'I don't know,' but [C.F.'s] mom continues to question
> us.
>
> 32.    In direct response to Parents' complaints about the different
> and unlawful treatment of C.F. on the basis of his disability, ACS
> Superintendent Sonny Bates and Assistant Superintendent Missy
> Storm made a false police report to the Ardmore Police
> Department regarding the video recordings obtained by Parents
> through C.F.'s Talker.

Complaint, ¶¶ 25-26, and 32.

The exhaustion requirement under § 1415(l) also applies to the Plaintiffs' allegations of

retaliation under the ADA, because the allegations relate to the School District's alleged "failure

to provide," and the Plaintiffs' "effort to obtain" for C.F., "a free appropriate public education."

*Batchelor*, 759 F.3d at 273-275 (finding allegations of retaliation under Section 504 and the

ADA, including allegations of bullying, intimidation and harassment of parents at IEP meetings,

and the failure to reimburse parent for cost of tutor "relate unmistakably" to the provision of

FAPE to a student and are subject to the IDEA's exhaustion requirement); *see also M.T.V.*, 446 F.3d at 1158-59 (finding parents' allegations of retaliation, including under the ADA, for harassment at IEP meetings and for writing intimidating letters in response to educational demands related to "M.T.V.'s evaluation and education" and are subject to the IDEA's exhaustion requirement).

The Plaintiffs may claim that they are not required to exhaust their administrative remedies because they have requested damages in this case and damages cannot be awarded in an administrative proceeding under the IDEA.  As noted above, however, the Tenth Circuit has explicitly rejected this argument by focusing on the meaning of the words "seeking relief that is also available under [the IDEA]" and concluding that "available" relief means "relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers."  *Padilla*, 233 F.3d at 1274.  The court has determined that a plaintiff may not avoid the obligation to exhaust administrative remedies merely because he or she seeks an award of damages.  *See Carroll*, 805 F.3d at 1227 ("By focusing on whether there is any relief available under the IDEA to remedy the injury, as opposed to the particular relief sought by the plaintiff, the IDEA process cannot be short-circuited by a rush to court seeking damages.") (quotations omitted).

### B.   The Plaintiffs' claims do not fall within one of the limited exceptions to the exhaustion requirement.

The Plaintiffs may also argue that their claims fall within one of the limited exceptions to the exhaustion requirement.  Whether exhaustion is required in a particular case is a question of law for the court, and the party seeking to avoid the exhaustion requirement has the burden of demonstrating entitlement to an exception.  *Cudjoe*, 297 F.3d at 1063 n.6.  The Tenth Circuit has recognized three such exceptions: when administrative remedies would be futile, when they

would fail to provide adequate relief, or when "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." *Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 724 (10th Cir. 1996); *Romer*, 992 F.2d at 1044.

The court explained in *Urban* that administrative remedies are generally futile or inadequate "when plaintiffs allege 'structural or systemic failure and seek system-wide reforms.'" *Urban*, 89 F.3d at 725. The court in *Romer* contrasted a request for structural reform with the claims presented in the case before it, which dealt only with "a single component" of the Colorado Department of Education's program. *Romer*, 992 F.2d at 1044. The court explained in *Urban* that to fall under the third exception, "the District must have adopted a policy of general applicability contrary to law which 'thereby renders agency expertise and the factual development of an administrative record less important.'" *Urban*, 89 F.3d at 725. Likewise, in *Romer* the court stressed that a plaintiff "does not necessarily fall within the third exception by challenging a policy of general applicability …. The plaintiffs must still show that the policy is contrary to law and that the underlying purposes of exhaustion would not be served." *Romer*, 992 F.2d at 1044.

Exhaustion would not be futile or inadequate in this case because the Plaintiffs do not allege structural or systemic failures in the School District's special education program. Instead, they allege specific conduct taken against C.F. Like in *Romer*, the Plaintiffs' allegations focus on the educational services provided to C.F. in connection with his special education program at the School District.

The Plaintiffs do not identify any "policy of general applicability," and they have alleged nothing to indicate that the underlying purposes of exhaustion would not be served. The Tenth

Circuit has repeatedly stated that there are multiple reasons parties should exhaust their administrative remedies under the IDEA:

> (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*McQueen v. Colorado Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007), *citing Romer*, 992 F.2d at 1044.  Those reasons are fully applicable to this case.

The Plaintiffs have not alleged in their Complaint that they have exhausted their administrative remedies or any facts that would bring them within any of the exceptions to the IDEA's exhaustion requirement.  *See Cudjoe*, 297 F.3d at 1063 ("[I]f a student with a disability seeks to bring a claim for educational injuries, then he must plead and show either that he has exhausted his administrative remedies under the IDEA or that the relief he is seeking [is] not available under the IDEA.").  Thus, the Plaintiffs' claims under Section 504 and the ADA should be dismissed for lack of subject matter jurisdiction.

**Proposition IV**

**<u>The Plaintiffs' Claim for Declaratory Judgment Under the SCA Must Fail</u>**

Rather than seeking declaratory relief pursuant to 28 U.S.C. § 2201 for the SCA claim, the Plaintiffs seek declaratory relief pursuant to Oklahoma procedural law, OKLA. STAT. tit. 12, § 1651.  This is improper.  *See Aces Transport, Inc. v. Ryan Transp. Servs., Inc.*, 2006 WL 1487008, at *9 (D. Kan. 2006), *citing Manuel v. Convergys Corp.*, 430 F.3d 1132, 1138 n.3 (11th Cir. 2005).

Further, this claim is moot.  On April 19, 2016, the School District brought suit against the Plaintiffs in the District Court of Carter County, Oklahoma, seeking a writ of mandamus or in

the alternative a declaratory judgment that the 792 surreptitiously intercepted audio and visual recordings of District personnel while C.F. was at school – via a parent placed recording program on C.F.'s Talker and between August and November, 2015 – were made in violation of the SCA and, therefore, inadmissible as evidence in DPH 2093. *See* <u>Petition (CV-2016-49)</u>, Exhibit 4. On May 18, 2016, a hearing was held on the School District's petition. While a written order has not yet been received, the court entered a bench ruling (i) declining to issue the requested writ of mandamus, and (ii) sustaining Plaintiffs' motion to dismiss by finding the exception contained in OKLA. STAT. tit. 13, § 176.4(5) to be applicable to all of the 792 recordings.

<u>**Conclusion**</u>

For the reasons and arguments set forth herein, the Ardmore City Schools requests that its Partial Motion to Dismiss with Combined Brief in Support be granted.

**Respectfully submitted,**

**s/ Kent B. Rainey**
**Kent B. Rainey, OBA No. 14619**
**Staci L. Roberds, OBA No. 18985**
**Rosenstein, Fist & Ringold**
**525 South Main, Suite 700**
**Tulsa, OK 74103**
**(918) 585-9211**
**Fax: (918) 583-5617**
**borainey@rfrlaw.com**
**sroberds@rfrlaw.com**

**Attorneys for Defendant Ardmore City Schools**

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 20, 2016, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Barrett T. Bowers
Ward & Glass, LLP
1601 36th Ave NW, Ste 100
Norman, OK 73072
barrett@wardglasslaw.com

*Attorneys for Plaintiffs*

s/ Kent B. Rainey
Kent B. Rainey